**William F. WEBB, Trustee of WFPP Trust, Plaintiff and Appellant,**

v.

**Frederick Paul NINOW; Staci L. Ninow; R–West, Inc., a corporation; West One Bank, Utah, a corporation; Homer Cutrubus; Ned F. Parson; Jim Hart; and Commercial Factors of Salt Lake City, Ltd., a limited partnership, Defendants and Appellees.**

No. 930522–CA.

Court of Appeals of Utah.

Oct. 24, 1994.

---

Robert F. Orton (argued), Milo S. Marsden, Jr., Marsden, Orton, Cahoon & Gottfredson, Salt Lake City, for appellant.

Francis J. Carney, Paul M. Simmons (argued), Suitter Axland & Hanson, Salt Lake City, for appellees.

Before BENCH, DAVIS and GREENWOOD, JJ.

DAVIS, Judge:

William F. Webb, trustee of the WFPP Trust (WFPP), appeals from a summary judgment in favor of defendants. We affirm.

## FACTS

The parties have stipulated to the following facts. WFPP owns a commercial building in Salt Lake City, Utah. On July 2, 1988, WFPP, as lessor, entered into a lease agreement with appellees Frederick Paul Ninow, Staci L. Ninow, and R–West Systems, Inc., as lessees. The lease extended from July 1, 1988 to August 31, 1993.

At some point after July 2, 1988, and before August 4, 1988, the lessees moved certain equipment onto the leased premises, including some laminating equipment. The predecessors in interest of West One Bank (West One) subsequently filed UCC–1 financing statements covering the laminating equipment as the secured parties on August 4, 1988; November 8, 1988; February 3, 1989; February 9, 1989; July 5, 1989; and October 27, 1989.

The lessees subsequently failed to pay rent and ultimately abandoned the leased premises on January 24, 1990. On February 2, 1990, William F. Webb, as trustee of WFPP, brought this action seeking, inter alia, a writ of attachment against the equipment located on the leased premises. Appellee West One filed an answer claiming a prior perfected security interest in the laminating equipment. Pending the trial court's ruling concerning the parties' respective claims to priority, the parties stipulated that the property

at issue could be sold and the proceeds placed in an escrow account.

Both parties moved for summary judgment on the issue of the priority of their claims to the proceeds of the sale of the property. The trial court ruled that West One's perfected security interest in the property had priority over WFPP's lessor's lien pursuant to Utah Code Ann. § 38–3–2 (1988). WFPP appeals, arguing the trial court erred in its interpretation of section 38–3–2.

## STANDARD OF REVIEW

The standard of review for an award of summary judgment is "well established." *White v. Deseelhorst,* 879 P.2d 1371, 1374 (Utah 1994). "Summary judgment is proper when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.... [W]e review the trial court's ruling for correctness." *Id.* (citations omitted).

## ANALYSIS

The sole issue to be determined in this case is the construction of Utah Code Ann. § 38–3–2 (1988), the statute governing priority of a lessor's lien. Section 38–3–2 provides in relevant part: "The lien provided for in this chapter [a lessor's lien] shall be preferred to all other liens or claims *except* claims for ... *perfected security interests....*" *Id.* (emphasis added).

WFPP contends that "perfected security interests" should be interpreted to mean "security interests perfected before the landlord's lien attaches." Therefore, because the landlord's lien in this case attached when the property was brought on to the leased premises, and because West One did not,yet have a perfected security interest, WFPP contends that its lessor's lien has priority.

■ It is a basic rule of statutory construction that "we first consider the plain language of the statute." *Hercules Inc. v. State Tax Comm'n,* 877 P.2d 133, 136 (Utah 1994); *Schurtz v. BMW of N. Am., Inc.,* 814

P.2d 1108, 1112 (Utah 1991). " 'Only if we find some ambiguity need we look further.' " *Hercules,* 877 P.2d at 136 (citing *Schurtz,* 814 P.2d at 1112). In addition, another "cardinal rule of statutory construction is that courts are not to infer substantive terms into the text that are not already there. Rather, the interpretation must be based on the language used, and the court has no power to rewrite the statute to conform to an intention not expressed." *Berrett v. Purser & Edwards,* 876 P.2d 367, 370 (Utah 1994) (citations omitted).

■ The plain language of section 38–3–2 states that a lessor's lien *does not* have priority over a perfected security interest. It in no way limits the phrase "perfected security interests" to "security interests perfected before the lessor's lien attaches." To adopt the reading of section 38–3–2 urged by appellant would disregard the plain meaning of the statute, and infer into the statute substantive terms that are not present. We decline to do so.

■ In addition to its lack of statutory support, Webb's argument that a lessor's lien has priority over a security interest perfected while the collateral is on leased property is not supported by Utah case law. In *Citizens Bank v. Elks Building, N.V.,* 663 P.2d 56 (Utah 1983), the supreme court resolved an issue involving the priority of competing security interests in equipment owned by Food Innovation Systems, Inc., d/b/a Pouches Restaurant (Pouches). Pouches leased a building from the Elks Buildings Corporation, N.V. (Elks) for a period running from August 15, 1980 to February 14, 1981. Pouches did not make the required monthly payment in November of 1980 and closed the restaurant in December of 1980. In March of 1981, Pouches applied for a $70,000 loan from Citizens Bank, listing its restaurant equipment as collateral. Citizens Bank perfected its security interest in the collateral on April 7, 1981. Two days later, the Elks filed a complaint asserting a landlord's lien against the equipment pursuant to Utah Code Ann. § 38–3–3 (1988). After the Elks obtained a

default judgment, they attempted to dispose of the property through a sheriff's sale. Citizens Bank appeared at the sale, presented its security interest, and claimed priority over the Elks's judgment lien.

The supreme court ruled that the Elks's statutory lessor's lien had ceased to exist because it was not perfected in a timely manner pursuant to Utah Code Ann. § 38-3-1 (1988) and in compliance with the procedures set forth in sections 38-3-3 through 38-3-6 (1988). *Citizens Bank,* 663 P.2d at 58. The court noted that "[h]ad Elks done this, its statutory lien would have been *perfected,* and it would have been prior to the Bank's security interest." *Id.* (emphasis added).[1]

In the instant case, appellant did not "perfect" its landlord's lien by obtaining and executing a writ of attachment prior to the perfection of West One's security interest in the laminating equipment. Accordingly, pursuant to the reasoning in *Citizens Bank,* West One's perfected security interest has priority.[2]

## CONCLUSION

The trial court correctly applied the plain meaning of Utah Code Ann. § 38-3-2 (1988) in concluding that West One's perfected security interest had priority over WFPP's lessor's lien. In further elaboration of this point, West One's security interest has priority because it was perfected before action was initiated on WFPP's lessor's lien. For the foregoing reasons, we affirm.

BENCH and GREENWOOD, JJ., concur.

---

1. The lessor's lien statute does not include the term "perfection," but does provide that in order to pursue a statutory lessor's lien, the lessor must file a complaint and supporting affidavit, apply for a writ of attachment, and file a bond. Utah Code Ann. § 38-3-4 (1988). Execution of the writ is provided for under § 38-3-6. *Id.* at § 38-3-6. These procedures must be undertaken within thirty days of the time lessee vacates the premises. *Id.* at § 38-3-1. *Citizens Bank* apparently affords these procedures the same status as "perfection" under the Utah Uniform Commercial Code.

2. WFPP argues that *Gray v. Kappos,* 90 Utah 300, 61 P.2d 613 (1936) supports his reading of § 38-3-2. *Kappos* involved sheep grazing on leased land. Lessor argued that because some of the sheep were purchased after lessee entered into the lease, his lien had priority over the bank's purchase-money mortgage. In resolving that case, the court interpreted an earlier version of the statute at issue in this case. In the place of "perfected security interests," the statute then gave priority to "mortgages for purchase money." The court first noted that the lessor's lien was "based entirely on the statute." *Kappos,* 61 P.2d at 615. It then concluded "[the lessor's] statutory lien, however, is subordinate to a purchase-money mortgage." *Id.* That holding is consistent with the holding this court reaches in the instant appeal.

WFPP contends that *Kappos* suggests that the conclusion might have been different if the bank had perfected its interest in the sheep *after* the sheep were brought on the leased property. *Kappos* is not clear on this subject. Since *Kappos* applied the statutory prioritization of purchase money security interests almost thirty years before the adoption of the Utah Uniform Commercial Code and approximately forty-one years before the prioritization of perfected security interests, no such meaning can be inferred.