STATE of Utah, Plaintiff and Appellee,

v.

Wilfred A. VIGIL, Jr., Defendant
and Appellant.

No. 900166.

Supreme Court of Utah.

Sept. 3, 1992.

Rehearing Denied Dec. 24, 1992.

R. Paul Van Dam, David B. Thompson,
Salt Lake City, for plaintiff and appellee.

James C. Bradshaw, Joan C. Watt, Salt
Lake City, for defendant and appellant.

ZIMMERMAN, Justice:

Wilfred A. Vigil, Jr., appeals from a trial
court order denying a motion he directed
against two counts of an information filed
against him. He moved to amend one
count of attempted second degree murder
and to dismiss a second count of attempted
second degree murder. The sole question
presented on appeal is whether the trial
court correctly ruled that Vigil could be
prosecuted for attempted second degree
murder under the depraved indifference al-
ternative of section 76–5–203(1)(c) of the
Code. Utah Code Ann. § 76–5–203(1)(c)
(1990) (amended 1991).[1] We hold that Utah
does not recognize attempted depraved in-

---

1. In 1991, the legislature changed "second de-
gree murder" to simply "murder" and "first de-
gree murder" to "aggravated murder." 1991
Utah Laws ch. 10, §§ 7–9 (codified as amended
Utah Code Ann. §§ 76–5–201 to –203 (Supp.
1992)).

difference homicide and reverse the trial court order denying Vigil's motion.

Because the facts are unimportant to the issue before us, we will summarize them briefly. Vigil was charged with one count of second degree murder, a first degree felony, *id.* § 76–5–203(1)–(2), and two counts of attempted second degree murder, a second degree felony, *id.* §§ 76–5–203(1), –4–101, –4–102(2). These counts arose out of his allegedly shooting a rifle into a crowd on State Street in Salt Lake City. The shooting resulted in the death of one person and the wounding of two others. Before trial, Vigil moved to amend one count of the information and dismiss another. The aim of the motion was to delete from the information anything that would allow the jury to find him guilty of attempted depraved indifference homicide. The trial court denied the motion, whereupon Vigil petitioned this court for permission to make an interlocutory appeal. We granted his request and now consider the correctness of the trial court's ruling.

■ We first state the standard of review. The question of whether Utah recognizes attempted depraved indifference homicide is purely a matter of statutory interpretation. Therefore, we review the trial court's ruling for correctness and give no deference to its conclusions. *State v. Petersen,* 810 P.2d 421, 424 (Utah 1991); *City of Monticello v. Christensen,* 788 P.2d 513, 516 (Utah), *cert. denied,* —— U.S. ——, 111 S.Ct. 120, 112 L.Ed.2d 89 (1990); *Provo City Corp. v. Willden,* 768 P.2d 455, 456 (Utah 1989).

The issue before us is narrow. We are asked to determine whether proof of the "knowing" mental state required for depraved indifference homicide under section 76–5–203(1)(c) of the Code is sufficient to satisfy the mental state required by Utah's attempt statute found in section 76–4–101. If we find that the "knowing" mental state required for depraved indifference homi-

cide is sufficient to satisfy the attempt statute, the State will be able to prosecute a defendant for attempt to commit depraved indifference homicide.

We begin with the two statutes. The first is the second degree murder statute, which sets out several alternative formulations of second degree murder. Utah Code Ann. § 76–5–203(1) (1990) (amended 1991). The formulation we are concerned with is subparagraph (1)(c), the depraved indifference formulation. Subparagraph (1)(c), as construed by this court in *State v. Standiford,* 769 P.2d 254, 263–64 (Utah 1988), and *State v. Fontana,* 680 P.2d 1042, 1046–47 (Utah 1984), provides that a defendant may be convicted of second degree murder if he or she killed another with a "knowing" mental state, i.e., if the defendant knew his or her conduct created a grave risk of death to another.[2]

The other statute of concern is the attempt statute, section 76–4–101. The mental state required by the attempt statute is found in the first two paragraphs, as indicated by emphasis below:

(1) For purposes of this part a person is guilty of an attempt to commit a crime if, *acting with the kind of culpability otherwise required for the commission of the offense,* he [or she] *engages in conduct constituting a substantial step toward commission of the offense.*

(2) For purposes of this part, *conduct does not constitute a substantial step unless it is strongly corroborative of the actor's intent to commit the offense.*

(3) No defense to the offense of attempt shall arise:

(a) Because the offense attempted was actually committed; or

(b) Due to factual or legal impossibility if the offense could have been committed had the attendant circumstances been as the actor believed them to be.

Utah Code Ann. § 76–4–101 (emphasis added).

---

**2.** In *Standiford,* we held that to convict a defendant of depraved indifference homicide, the jury must find "(1) that the defendant acted knowingly (2) in creating a grave risk of death, (3) that the defendant knew the risk of death

was grave, (4) which means a highly likely probability of death, and (5) that the conduct evidenced an utter callousness and indifference toward human life." 769 P.2d at 264.

■ To determine whether the legislature intended to recognize attempted depraved indifference homicide, we begin with the statutes' plain language. We will resort to other methods of statutory interpretation only if we find the language of the statutes to be ambiguous. *See Shurtz v. BMW of N. Am., Inc.*, 814 P.2d 1108, 1112 (Utah 1991); *Bonham v. Morgan*, 788 P.2d 497, 500 (Utah 1989) (per curiam).

Paragraph (1) of the attempt statute provides that an attempt can occur whenever the actor acts with the "kind of culpability otherwise required" for the completed crime and his or her act is a "substantial step" toward committing the crime. Utah Code Ann. § 76–4–101(1). Because the criminal code specifies four discrete mental states that may result in criminal liability, i.e., intent, knowledge, recklessness, or negligence, *id.* § 76–2–101(1), the language in paragraph (1) seems to suggest that an attempt conviction may be based upon the incomplete perpetration of any of the crimes in the Code.

On the other hand, paragraph (2) of the attempt statute states that the defendant's conduct must be corroborative of his or her "intent to commit the offense." *Id.* § 76–4–101(2). At first blush, this provision appears to contradict the broad "culpability" language in paragraph (1). While paragraph (1) seems to allow for any mental state so long as it falls within the "kind of culpability otherwise required" for the underlying offense, paragraph (2) seems to require a mental state of "intent."

■ However, closer examination indicates that paragraphs (1) and (2) are not contradictory. "Culpability," the term used in paragraph (1), and "intent," the term used in paragraph (2), are distinct concepts. Intent is a mental state. *Black's Law Dictionary* 415 (5th abr. ed. 1983). Culpability, on the other hand, refers to blameworthiness, *id.* at 200; 25

C.J.S. *Culpability* (1966), a value society assigns to particular behaviors that it deems punishable. Culpability is an inclusive term that comprehends actions or omissions, the mental state with which they are done, and the circumstances in which the acts or omissions take place. *See* Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law* § 24 (1979) [hereinafter *Criminal Law* ]. Thus, although culpability includes consideration of the actor's mental state, it is a much broader concept than intent. *See* 25 C.J.S. *Culpable* (1966) (defining culpability as "deserving punishment ... or blame or censure," but noting that it does not necessarily connote "guilt," "malice," or "guilty purpose").[3]

■ With this distinction in mind, we interpret paragraphs (1) and (2) of section 76–4–101. In doing so, we rely on two well-established rules of statutory construction. *Cf.* Utah Code Ann. § 76–1–106 (requiring terms to be construed according to their fair import). First, specific statutory provisions take precedence over general statutory provisions. *E.g., Osuala v. Aetna Life & Casualty*, 608 P.2d 242, 243 (Utah 1980). Second, statutory provisions should be construed to give full effect to all their terms. *E.g., Shurtz*, 814 P.2d at 1112.

■ Applying these two rules to the attempt statute resolves the apparent contradiction between paragraphs (1) and (2). The more specific requirement of intent in paragraph (2) (i.e., "intent to commit the [underlying] offense") takes precedence over the general culpability requirement in paragraph (1) (i.e., "culpability otherwise required for the commission of the [underlying] offense"). And to give the fullest possible effect to the terms of paragraphs (1) and (2), we construe the culpability requirement in paragraph (1) to refer to the attendant circumstances, if any,[4] of the un-

---

**3.** We are aware that culpability is sometimes used inter-changeably with mental state. However, we think that this usage is imprecise.

**4.** "Attendant circumstances" are those circumstances that may be required to be present for criminal liability in addition to the requisite

physical conduct, or actus reus, and the mens rea specified for the offense. *See Criminal Law* § 34, at 237, 240–41. In general, mens rea means "guilty mind," that attribute which, along with physical conduct, was required for criminal liability under common law, *see id.* § 27, at 191–92, and is now required by statute except

derlying offense and construe the intent language in paragraph (2) to limit the attempt statute to offenses with a mental state of "intent." In other words, attempt can be found for uncompleted offenses that require "intent," even though those offenses have attendant circumstances that require lesser mental states.

Our construction of Utah's attempt statute finds support in the attempt provisions of the Model Penal Code ("MPC") and the 1971 Proposed Federal Criminal Code ("PFCC"), both of which served as bases for the Utah provision. *See State v. Pearson*, 680 P.2d 406, 408 (Utah 1984) (per curiam) (noting that the Utah attempt statute was modeled after the MPC version); Loren Martin, *Utah Criminal Code Outline* 169 (1973) (noting that the Utah attempt statute was modeled after section 1001 of the PFCC); *cf.* 1 National Commission on Reform of Federal Criminal Laws, *Working Papers of the National Commission on Reform of Federal Criminal Laws* 351–52 (1970) (relying on the stated purposes of the MPC attempt provision as the current penalogical thinking) [hereinafter *National Commission Working Papers*].

Both the MPC and PFCC provisions include two phrases regarding the requisite mental states for attempt that are the same as or analogous to the provisions of the Utah attempt statute. One phrase is the "kind of culpability otherwise required" that is also used in paragraph (1) of the Utah attempt statute. The other phrase specifies the mental state necessary for the conduct that constitutes the substantial step, which corresponds to the "intent" requirement in paragraph (2) of the Utah attempt statute. *See* Model Penal Code § 5.01(1), (2), *reproduced in* 1 Amer. L.Inst., *Model Penal Code and Commentaries* 295–96 (1985) [hereinafter *MPC Commentaries*]; Proposed Federal Criminal Code § 1001(1), *reproduced in* 1 National Commission on Reform of Federal Criminal Laws, *Final Report of the National Commission on Reform of Federal Criminal Laws* 6 (1971). The commentaries to the MPC and PFCC attempt provisions indicate that the clause requiring the "kind of culpability otherwise required" for commission of the offense refers to the attendant circumstances of the underlying offense and the requisite mental states for those circumstances. *See MPC Commentaries* § 5.01, at 301, 303; *National Commission Working Papers* at 355. In contrast, the commentaries make clear that both the MPC and PFCC attempt provisions require a more culpable mental state than recklessness for conduct that creates

for strict liability offenses. *See* Utah Code Ann. § 76–2–101(1) ("[N]o person is guilty of an offense unless his [or her] conduct is prohibited by law and ... [h]e [or she] acts intentionally, knowingly, recklessly, with criminal negligence, or with a mental state otherwise specified...."). The mens rea is the mental state required in all homicide offenses for criminal liability. *See id.* § 76–2–102 ("Every offense not involving strict liability shall require a culpable mental state...."); *id.* § 76–5–201 ("A person commits criminal homicide if he [or she] intentionally, knowingly, recklessly, with criminal negligence, or acting with a mental state otherwise specified in the statute defining the offense, causes the death of another human being, including an unborn child.").

Occasionally, an offense may require a certain mental state for an attendant circumstance. For example, under section 76–5–202(1)(k) of the current Code, a person is guilty of aggravated murder ("first degree murder" under the 1990 statute) if he or she intentionally or knowingly causes the death of a police officer acting in an official capacity and the person knew or "reasonably should have known" that the decedent was a police officer. *Id.* § 76–5–202(1)(k). The mens rea element for this offense is intent or knowledge, whereas the attendant circumstance that the decedent was a police officer requires at least a negligent mental state. Some offenses do not have attendant circumstances, such as the intentional or knowing formulation of murder ("second degree murder" under the 1990 statute), which requires only conduct that intentionally or knowingly causes the death of another. *Id.* § 76–5–203(1)(a). Other offenses that do have attendant circumstances may not require a mental state for one or all of those circumstances. An example of the latter type of offense is the depraved indifference formulation of murder, which requires that the defendant act "under circumstances evidencing a depraved indifference to human life." *Id.* § 76–5–203(1)(c). The defendant's mental state under this provision is irrelevant to the determination of this attendant circumstance; it refers solely to objective circumstances. *Fontana*, 680 P.2d at 1045, 1047. *See generally Criminal Law* § 27, at 194–95.

the substantial step. The PFCC attempt provision requires intentional conduct, *National Commission Working Papers* at 354 & n. 6, and the MPC attempt provision requires either intentional conduct or the belief that the actor's conduct will result in the proscribed act. *MPC Commentaries* § 5.01, at 303.

■ Despite the foregoing support for limiting the Utah attempt provision to offenses requiring intent, the State argues that we should define "intent" in paragraph (2) of the attempt statute broadly to include purposeful intent and "equivalent" mental states, specifically, that required for depraved indifference homicide. The State reasons that this makes sense from a policy standpoint because the culpability of a person convicted of depraved indifference second degree murder is the same as the culpability of a person convicted of intentional second degree murder. *See Standiford*, 769 P.2d at 258; *Fontana*, 680 P.2d at 1045. In short, the State argues that the degree of the murder (i.e., "first" or "second") is a measure of the societal judgment about the criminal's culpability and therefore murders of equal degree should be treated similarly.

Notwithstanding the apparent logic of this argument, the State's suggested interpretation of "intent" in paragraph (2) of the attempt statute is contrary to the definition given to it by the legislature. Section 76–2–103(1) of the Code states that a person engages in conduct intentionally "with respect to the nature of his [or her] conduct or to the result of his [or her] conduct, when it is his [or her] *conscious objective or desire* to engage in the conduct or cause the result." Utah Code Ann. § 76–2–103(1) (emphasis added). Normally, we presume that when the legislature defines a term of art and later uses that term in the same body of statutes, it intends a consistent meaning. *E.g., Cannon v. McDonald*, 615 P.2d 1268, 1270 (Utah 1980). Accordingly, the word "intent" as used in paragraph (2) of the attempt statute should be read to mean "conscious objective or desire." This meaning of the word "intent" obviously is distinguishable from

knowledge of the proscribed conduct or result, which is the mental state required for depraved indifference homicide.

Moreover, the State's position is inconsistent with our prior decisions. In *State v. Bell*, 785 P.2d 390 (Utah 1989), we addressed the question of whether there could be attempted felony-murder under subparagraph (d) of the second degree murder statute. Utah Code Ann. § 76–5–203(1)(d) (Supp.1989) (amended 1991). We said no, reasoning that "[t]he crime of attempted murder does not fit within the felony-murder doctrine because an attempt to commit a crime requires proof of an *intent* to consummate the crime...." 785 P.2d at 393 (emphasis added).

In two other cases, we considered attempt in the context of Utah's manslaughter statute, which sets out three alternative formulations of manslaughter. Utah Code Ann. § 76–5–205. Under this statute, manslaughter may arise where the actor (i) recklessly causes death, *id.* § 76–5–205(1)(a), (ii) causes death under the influence of extreme emotional disturbance, *id.* § 76–5–205(1)(b), or (iii) causes death under circumstances where the actor reasonably believes that his or her conduct is legally justifiable. *Id.* § 76–5–205(1)(c).

In *State v. Norman*, 580 P.2d 237 (Utah 1978), we addressed the first two formulations. We held that an attempt cannot be charged where the attempted crime is the form of manslaughter described in subparagraph (a) of the statute because that formulation requires only the mental state of recklessness, whereas "[a]n attempt to commit a crime is an act done with the *intent* to commit that crime...." *Id.* at 239 (emphasis added). Regarding subparagraph (b), we held that attempted manslaughter is possible under this formulation because "the killing may be *intentional* but due to mental or emotional disturbance on the part of the defendant." *Id.* at 240 (emphasis added).

We addressed the third formulation in *State v. Howell*, 649 P.2d 91 (Utah 1982). There we held that attempted manslaughter can be charged for a crime described under subparagraph (c) of the manslaugh-

ter statute because the killing proscribed under that provision must be *"intentional."* *Id.* at 94 (emphasis added). We again noted that "one cannot be guilty of an attempt to commit a crime unless the necessary mens rea of the completed crime is *intentional* conduct." *Id.* at 94 n. 1 (emphasis added).[5]

At bottom, the State seeks to replace the word "intent" in paragraph (2) of the attempt statute with, as it says, "intent *or a* mental state that is equivalent thereto" and to modify or reject the holdings of *Bell, Norman,* and *Howell.* Although it may make sense to allow attempt for homicide offenses that are presumably equal in culpability to intentional murder, we believe that the most reasonable approach, in light of the statutory language and our cases, is to read the word "intent" in paragraph (2) of the attempt statute as that word is defined in section 76–2–103(1).

Clarity is crucial to a just criminal law system. Jurors are instructed to apply the language set forth in our penal statutes to determine criminal liability. Articulating the various mental states required for the various crimes in the Code is difficult enough without giving multiple meanings to the word "intent."

We hold that to convict a defendant of attempted second degree murder, the prosecution must prove that the defendant had a conscious objective or desire to cause the death of another. Because the mental state required for depraved indifference homicide falls short of that intent, the crime of attempted depraved indifference homicide does not exist in Utah.

The order of the trial court denying Vigil's motion to dismiss and amend is reversed.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.

---

**5.** In *State v. Maestas,* 652 P.2d 903 (1982), we rejected an argument that the Utah attempt statute required a higher level of "intent" than that required for first degree murder. In so holding, we interpreted paragraph (1) of the Utah attempt statute as making "clear that regardless of any requirements which the common law may impose concerning 'attempt' crimes, Utah law requires only 'the kind of culpability otherwise required for the commission of the [completed] offense.'" *Id.* at 904 (brackets in original) (quoting Utah Code Ann. § 76–4–101(1) (1953)). Alternatively, we wrote that even if the Utah attempt statute incorporated the common law requirement of intent, the mental state required

for first degree murder was sufficient to meet that requirement. *Id.* at 905.

The first alternative rationale relied on in *Maestas* is clearly inconsistent with our cases in *Bell, Howell,* and *Norman* and with our holding in the instant case. Thus, that portion of *Maestas* that conflicts with these cases and today's holding is incorrect. However, we note that *Maestas* is still good law insofar as it authorizes prosecution for attempted aggravated murder under the intentional or knowing formulation of section 76–5–202(1) or attempted murder under the intentional or knowing formulation of section 76–5–203(1)(a).