2004 UT App 51

**STATE of Utah, Plaintiff and Appellee,**

v.

**Colby REES, Defendant and Appellant.**

**No. 20011026–CA.**

Court of Appeals of Utah.

March 11, 2004.

Franklin Richard Brussow, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Erin Riley, asst. atty. gen., Salt Lake City, for Appellee.

Before BENCH, Associate P.J., ORME and THORNE Jr., JJ.

## MEMORANDUM DECISION

BENCH, Associate Presiding Judge:

¶ 1 Colby Rees appeals his conviction of Attempted Forcible Sexual Abuse, a third degree felony, in violation of Utah Code Annotated Sections 76–5–404 and 76–4–101 (2003). We affirm.

¶ 2 Rees essentially argues that evidence of his prior conviction was inadmissible character evidence pursuant to Utah Rule of Evidence 404(b). When analyzing the admissibility of bad-acts evidence, the trial court must determine "(1) whether the evidence is being offered for a proper, non-character purpose under rule 404(b), (2) whether such evidence meets the requirements of rule 402, and (3) whether the evidence meets the requirement of rule 403." *State v. Decorso*, 1999 UT 57, ¶ 20, 993 P.2d 837, *cert. denied*, 528 U.S. 1164, 120 S.Ct. 1181, 145 L.Ed.2d 1088 (2002).

¶ 3 At trial, the State argued that the purpose in offering evidence of Rees's past sexual offense was to show his "motive, intent to gratify his sexual desires, and absence of mistake or accident," and the victim's lack of consent. His past actions—making a sexual remark and inappropriately touching a woman in a parking lot—are consistent with the allegation that Rees was attempting to gratify "sexual desire" when he took the hand of the victim and pulled her down toward his erect and exposed penis. Utah Code Ann. § 76–5–404(1). Motive, intent, or absence of mistake or accident are purposes expressly allowed under rule 404(b). Accordingly, the evidence was properly offered for non-character purposes.

¶ 4 The next inquiry is "whether the bad acts evidence meets the requirements of rule 402, which permits admission of only relevant evidence." *State v. Nelson–Waggoner*, 2000 UT 59, ¶ 19, 6 P.3d 1120. Rule 401 of the Utah Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, "unless the other crimes evidence tends to prove some fact that is material to the crime charged—other than the defendant's propensity to commit crime—it is irrelevant and should be excluded." *Decorso*, 1999 UT 57 at ¶ 22, 993 P.2d 837. Prior bad-acts evidence " 'is both relevant and material to the issue of consent.' " *Nelson–Waggoner*, 2000 UT 59 at ¶ 24, 6 P.3d 1120 (citation omitted). Furthermore, intent is an essential element of the charges against Rees, and thus relevant. Therefore, the bad-acts evidence is relevant pursuant to rule 402.

¶ 5 The final inquiry is whether the probative value of the evidence was outweighed by the danger of unfair prejudice, pursuant to rule 403. In determining whether the evidence of Rees's prior conviction met the requirements of rule 403,

> " 'a variety of matters must be considered, including the strength of the evidence as to the commission of that crime, the similarities between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree which the evidence probably will rouse the jury to overmastering hostility.' "

*Nelson–Waggoner*, 2000 UT 59 at ¶ 20, 6 P.3d 1120 (quoting *Decorso*, 1999 UT 57 at ¶ 29, 993 P.2d 837) (other citations omitted). A review of the record reveals that the trial court properly considered these matters. First, there were several similarities between the two crimes including the fact that both "involved the uninvited obscene touching of completely unknown women for the purpose of sexual gratification." *State v. Rees*, 2002 UT App 347. Second, the time between the incidents was only four months. Because " 'proximity in time combined with similarity in type of crime virtually guarantees admittance of prior acts evidence,' " *Nelson–Waggoner*, 2000 UT ¶ 59 at 29, 6 P.3d 1120 (citation omitted), "the combination of these two factors makes the bad acts evidence in this

case highly probative." *Id.* Furthermore, the need for the evidence was great. It was essentially the only evidence of Rees's intent, other than the victim's speculation. Finally, there is no reasonable indication that the evidence would rouse the jury to "overmastering hostility." *Id.* at ¶ 20. The trial court therefore properly admitted the evidence.

¶ 6 Additionally, Rees claims that the evidence failed to prove that he attempted to use force, threat, or intimidation to overcome the victim's earnest resistance. *See* Utah Code Ann. § 76–5–406 (1988). However, Rees relies on an old and inapplicable version of the statute.[1] While the 1988 version defines "without consent" as a use of force or threat to overcome the victim's earnest resistance, the version applicable in this case provides that lack of consent can be merely expressed "through words or conduct." Utah Code Ann. § 76–5–406 (2003). Language requiring that the victim earnestly resist is eliminated. Thus forcible sexual abuse "may be prosecuted solely on the basis of lack of consent by the victim, absent any actual force or violence." *State v. Hammond*, 2001 UT 92, ¶ 16, 34 P.3d 773. " 'The determination of whether ... consent was present or absent in any given case is factual in nature, and is thus a matter for determination by the finder of fact.' " *In re J.F.S.*, 803 P.2d 1254, 1257 (Utah Ct.App.1990) (citation omitted). In reviewing a jury verdict, we accord "high deference to the fact-finder" and do not "substitute our judgment for that of the fact-finder." *State v. Hamilton*, 2003 UT 22, ¶ 38, 70 P.3d 111 (other quotations and citation omitted). In this case, there was sufficient evidence of lack of consent to justify the jury's verdict.

¶ 7 We therefore affirm.

¶ 8 I CONCUR IN THE RESULT: GREGORY K. ORME, Judge.

---

1. Rees also argues that he was denied due process when the trial court refused to give his proposed jury instructions regarding the "lack of consent" element of the crime. However, because Rees relied on an old and inapplicable version of the statute, the court properly refused "to give an instruction that misstates the law." *State v. Hamilton*, 827 P.2d 232, 238 (Utah 1992).

THORNE, Jr., Judge (dissenting):

¶ 9 I respectfully dissent.

¶ 10 Although case law makes clear that when specific intent is an element of the charged crime, and the purpose of the evidence is not to attack the defendant's character, prior bad-act evidence is not prohibited, *see, e.g., United States v. Hernandez*, 84 F.3d 931, 935 (7th Cir.1996) (stating "when a defendant is charged with a specific intent crime, the government may present other acts evidence [in its case-in-chief] to prove intent" (quotations and citation omitted)), case law also makes clear that the such evidence must satisfy the requirements of rules 402 and 403, of the Utah Rules of Evidence, before it is deemed admissible.[1]

¶ 11 To be admissible,

> the evidence [first] must be directed toward establishing a matter in issue other than the defendant's propensity to commit the charged crime. Second, the 'other act' must be similar to the charged conduct and be close enough in time to be relevant to the matter at issue. Third, the evidence [of the prior act] must be sufficient to support a jury finding that the defendant committed the similar act. Finally, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice.

*Hernandez*, 84 F.3d at 935.

¶ 12 Here, because Rees had been convicted for the prior act in question, we may assume that the State satisfied the third element of the standard. Consequently, the analysis will turn on the outcome of the remaining three. First, we must examine whether the evidence was directed toward an issue in dispute and not toward showing Rees's propensity to commit sex crimes. Although it may appear that the State's deci-

---

1. In *United States v. Hernandez*, 84 F.3d 931 (7th Cir.1996), the Seventh Circuit Court of Appeals outlined the factors to apply when "reviewing the admissibility of 404(b) evidence." *Id.* at 935. I believe that these factors not only mirror the Utah requirements, they describe the process that a trial court should apply when faced with situations like that presented here.

sion to use the evidence was motivated by its desire to show Rees's propensity to commit the charged crime,[2] the State argued that its purpose was to show intent. Because intent is always at issue in a specific intent crime,[3] the State's assertion is sufficient to satisfy the first element, despite the fact that Rees presented no testimony.

¶ 13 Second, we must consider whether the evidence satisfies the relevancy requirement of rule 402 of the Utah Rules of Evidence, or, in other words, we must determine whether the prior act is "similar to the charged conduct and ... [occurred] close enough in time to be relevant to the matter at issue." *Hernandez*, 84 F.3d at 935.[4] The prior act offered by the State in this case involved an incident wherein Rees placed his hands on the covered genital area of a female victim, after he followed her for a time. Rees saw the previous victim at a store, followed her as she left the store and went to her car, and approached her. He briefly spoke to the victim, commented on her anatomy, and then groped her. In the instant case, however, Rees was accused of approaching the victim, engaging her in conversation, and then luring her to his car by proffering his hand. The victim took his hand in the mistaken belief that Rees's act was a friendly gesture. Instead, Rees used the ruse to draw her attention toward his exposed penis. He did not attempt to touch her genitals, nor does it appear that he attempted to force her to touch his.

¶ 14 Although both acts involve an attempt at either sexual gratification, or an attempt to cause emotional pain, the similarities end there. In the prior case, Rees followed the victim and imposed himself upon her by grabbing and fondling her. In this case, Rees sought to have the victim approach and then displayed his exposed genitals to her. Although certain superficial similarities exist between the cases—i.e., they both involve sexual offenses—I do not share the lead opinion's conclusion that Rees's previous assault was similar enough to the instant case to justify its admission into evidence. Accordingly, I would conclude that the evidence does not satisfy all of the relevancy requirements necessary for admission under rule 404(b).

¶ 15 Furthermore, if we assume that Rees's prior assault was sufficiently similar to the instant case, thus satisfying any relevancy concerns, I believe that the probative value of the prior act evidence, as presented in this case, was substantially outweighed by the danger of unfair prejudice. Specifically, the prior act itself was inflammatory and of little real value to proving the elements necessary for conviction in the instant case. Moreover, the State's decision to replicate the previous trial—virtually in its entirety— was particularly inflammatory and of no real probative value to the instant case.

¶ 16 After introducing its direct evidence, the State called the victim of the previous assault, called the officer who investigated the previous assault, admitted into evidence a photo of the previous crime scene, and played for, and submitted to, the jury an audio-taped interrogation of Rees made during the investigation of the prior act. Ac-

---

**2.** Not only did the State call the victim of the prior act to testify, the State also called the police officer who investigated the prior act. The State additionally introduced into evidence a photograph of the previous crime scene and an audiotape of Rees's interrogation performed during the investigation of the previous act, which the trial court then allowed into the jury room during its deliberations. Finally, during its closing argument, the State labeled Rees "a sexual predator" and argued that "we know what he did before, four months prior to this, and we know what he did with this.... He's out there and he's just preying upon stranger women who he thinks are attractive."

**3.** Rees was charged with attempted forcible sexual abuse, a violation of Utah Code Annotated

sections 76–5–404 and 76–4–101 (1999). Because attempt is a crime of specific intent, *see State v. Vigil*, 842 P.2d 843, 846–47 (Utah 1992) (determining that, in Utah, attempt is a crime of specific intent), *overruled on other grounds by State v. Casey*, 2003 UT 33, 82 P.3d 1106, the State may properly introduce *relevant* prior act evidence to demonstrate Rees's intent in the instant case.

**4.** Because the prior act occurred less than six months before this incident, I believe it satisfies the timing requirement set forth in *Hernandez*. See 84 F.3d at 935; *see also State v. Nelson–Waggoner*, 2000 UT 59, ¶¶ 20, 29, 6 P.3d 1120. Accordingly, I address only the lack of similarities between the events.

cepting, for the sake of this discussion, that the previous act evidence was admissible to prove Rees's intent, the sheer volume of evidence amounted to a retrial of Rees's previous assault. When viewed against the backdrop of the direct evidence presented to the jury concerning this assault, the State's prior act evidence was overwhelming. The extraordinary detail presented concerning Rees's prior act was simply not necessary to prove the contested element of intent and, instead, served only to inflame the jury's hostility toward Rees.

¶ 17 Because the prior bad-act evidence involved a sexual assault, albeit one substantially dissimilar from that alleged in the instant case, I believe that the trial court abused its discretion in determining that the evidence was not "substantially more prejudicial than probative." Utah R. Evid. 403. Admittedly, the evidence demonstrated that Rees had a propensity to seek sexual gratification from women unknown to him. However, it did nothing to prove or disprove his guilt in this case. Nor did it provide a necessary connection to his methods, his patterns, his motive, or his identity. The evidence did, however, demonstrate to the jury that Rees is a reprehensible human being who had, in the past, inflicted himself upon an unsuspecting and unwilling young woman. The importance of the prior act evidence to the instant case was insufficient to counterbalance the State's decision to present it in an extremely detailed and inflammatory fashion. The quality and volume of the evidence prejudiced the jury and ensured that Rees was convicted for being a bad person, rather than for the crime in question. Consequently, the evidence was substantially more prejudicial than probative and it should never have been admitted as evidence in this trial.

¶ 18 Accordingly, I disagree with the lead opinion's conclusion that the evidence was properly admitted, and would, instead, reverse Rees's conviction and remand this case for a new trial.